# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHANNON HURD | CIVIL ACTION |
| versus | NO. 09-3112 |
| N. BURL CAIN | SECTION: "S" (1) |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Shannon Hurd, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On June 22, 2004, he was convicted of first degree robbery.[1] He was subsequently found to be a fourth offender[2] and was sentenced as such to a term of life

---

[1] State Rec., Vol. II of V, transcript of June 22, 2004, p. 179; State Rec., Vol. I of V, minute entry dated June 22, 2004; State Rec., Vol. I of V, jury verdict form.

[2] State Rec., Vol. II of V, transcript of November 5, 2004, p. 17; State Rec., Vol. I of V, minute entry dated November 5, 2004; State Rec., Vol. I of V, Reasons dated December 3, 2004.

imprisonment without benefit of parole, probation, or suspension of sentence.[3] The Louisiana Fifth Circuit Court of Appeal affirmed his conviction on November 29, 2005,[4] and the Louisiana Supreme Court denied his related writ application on November 17, 2006.[5]

On or about August 1, 2007, petitioner filed with the state district court an application for post-conviction relief.[6] That application was denied on August 14, 2007.[7] His related writ applications were likewise denied by the Louisiana Fifth Circuit Court of Appeal on October 24, 2007,[8] and by the Louisiana Supreme Court on September 19, 2008.[9]

On February 26, 2009, petitioner filed the instant federal application for *habeas corpus* relief. In support of his application, he asserts the following claims:

1. There was insufficient evidence to support petitioner's conviction;

2. The prosecutor's closing argument was improper; and

3. Petitioner received ineffective assistance of counsel.

---

[3] State Rec., Vol. II of V, transcript of December 3, 2004, p. 10; State Rec., Vol. II of V, minute entry dated December 3, 2004.

[4] State v. Hurd, 917 So.2d 567 (La. App. 5th Cir. 2005) (NO. 05-KA-258); State Rec., Vol. III of V.

[5] State v. Hurd, 942 So.2d 530 (La. 2006) (No. 2006-KO-1128); State Rec., Vol. III of V.

[6] State Rec., Vol. III of V.

[7] State Rec., Vol. III of V, Order dated August 14, 2007.

[8] State v. Hurd, No. 07-KH-734 (La. App. 5th Cir. Oct. 24, 2007) (unpublished); State Rec., Vol. IV of V.

[9] State *ex rel.* Hurd v. State, 992 So.2d 955 (La. 2008) (No. 2007-KH-2350); State Rec., Vol. V of V.

The state concedes that petitioner's application is timely filed and that he exhausted his state court remedies.[10]

Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

_____

[10] Rec. Doc. 9, pp. 3-4.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> At approximately 6:00 p.m. on July 7, 2003, Carolyn Fleming was in her home on Moisant Street in Kenner with her husband and three grandchildren when a man walked through the unlocked front door. Mrs. Fleming asked the man what he was doing in her home and the man replied that he was there to rob her and that he wanted her money. Mrs. Fleming could not see the man's hands as he had one hand under his shirt pointing at her which led Mrs. Fleming to believe he was pointing a gun at her. Mrs. Fleming went to her husband, who was in the living room, and told him to give the man his money as he was there to rob them. Mr. Fleming reached into his pocket and gave the man between $12 and $13 in the denomination of a $10 bill and two to three $1 bills. Mrs. Fleming then gave the man all the money in her purse, which was $1. Thereafter, the man walked out of the house.
>
> Mrs. Fleming immediately called 911 to report the robbery. She described the perpetrator as a black male wearing a green striped shirt. Officer Larry Cosse was dispatched to the call. En route and within three blocks of the crime scene, Officer Cosse observed Hurd who matched the broadcasted description of the perpetrator. Officer Cosse and his riding partner, Officer Russo, approached defendant with their guns drawn and instructed him to show his hands. Hurd fled and a pursuit followed. After a struggle, Hurd was detained. A pat down search revealed a $10 bill in the pocket of his pants. When Hurd was placed into the police unit, four $1 bills fell from his person.
>
> Within fifteen to twenty minutes after the robbery, the victims were brought to the location where Hurd was being detained and

identified him as the person who robbed them. Additionally, the victims' nine-year-old granddaughter, who saw the perpetrator in the home, was brought to the location where Hurd was being detained and identified him as the person who robbed her grandparents.[11]

### Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> In Hurd's first two assignments of error he argues the evidence is insufficient to support his conviction of first degree robbery because the conviction was based on unreliable out-of-court identifications. Hurd contends the victims' identifications are unreliable because they were based exclusively on clothing, as opposed to face recognition or physical features, and because the one-on-one identifications were unduly suggestive. As such, Hurd asserts the State failed to prove he was the perpetrator of the robbery beyond a reasonable doubt.
>
> The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.[FN2]
>
> > [FN2] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
>
> Proof of first degree robbery requires a showing that the defendant took something of value from another while leading the victim to reasonably believe he was armed with a dangerous weapon. LSA-R.S. 14:64.1. Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof under Jackson.[FN3]

---

[11] State v. Hurd, 917 So.2d 567, 569 (La. App. 5th Cir. 2005) (NO. 05-KA-258); State Rec., Vol. III of V.

[FN3]  State v. Taylor, 99-296 (La. App. 5 Cir. 7/27/99), 740 So.2d 216, 222, writ denied, 99-2609 (La. 3/17/00), 756 So.2d 322.

To prove identification in this case, the State offered the testimony of Carolyn Fleming, one of the victims, who gave the initial description of the perpetrator and identified defendant as the perpetrator shortly after the incident.  Mrs. Fleming first described the perpetrator to the 911 operator as a black male wearing a striped green shirt and baggy blue jeans.  She later identified defendant as the perpetrator based on his clothes, which were the same as the clothing worn by the perpetrator.  In addition to the striped green shirt and baggy blue jeans, Mrs. Fleming identified Hurd based on his maroon "drawers" which were visible when Mrs. Fleming asked if Hurd's shirt could be lifted during the identification procedure.

The State also offered the testimony of Jack Fleming, the other victim, who told the police the perpetrator was wearing a green and white striped shirt.  Mr. Fleming identified Hurd as the perpetrator within twenty minutes of the robbery based on Hurd's clothing.  When shown the shirt Hurd was wearing at the time of his arrest, Mr. Fleming stated it was the same shirt the perpetrator wore but admitted on cross-examination that the shirt did not have any white on it.

The victims' granddaughter, K.C., who was at the home during the robbery, testified the perpetrator was wearing a green shirt with black stripes, baggy blue jeans, and a cap.  She also identified Hurd as the perpetrator within minutes after the robbery.  She stated she recognized Hurd as the man who committed the robbery based on his clothes.

All three witnesses stated they were unable to identify the perpetrator by his face and were not asked to make an in-court identification of defendant as the perpetrator.

Officer Larry Cosse testified that Hurd was first spotted approximately three blocks from the crime scene wearing the same clothes described by Mrs. Fleming to the 911 operator.  When confronted by the police, Hurd fled.  During the chase, a $1 bill fell from Hurd's pants.  Once Hurd was subdued, a pat down search was conducted and a $10 bill was found in his pocket.  Four $1 bills subsequently fell from Hurd's person when he was placed into the police unit.  Within twenty minutes of the robbery, both victims and their granddaughter positively identified Hurd as the perpetrator.

Hurd argues this evidence is insufficient because the out-of-court identifications were unreliable.  Prior to trial, Hurd filed

a motion to suppress identification, which was denied after a hearing. The trial court specifically found the lineup procedure was constitutional.

A defendant challenging an identification procedure must prove that the identification was suggestive and there was a substantial likelihood of misidentification.[FN4]  It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness.[FN5]  "Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony."[FN6] Factors to consider in assessing the reliability of an identification include:  1) the witness' opportunity to view the criminal at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of his prior description of the criminal, 4) the level of certainty demonstrated at the confrontation, and 5) the time between the crime and the confrontation.[FN7]

[FN4]  State v. Mills, 01-110 (La. App. 5 Cir. 6/27/01), 790 So.2d 102, 106.

[FN5]  Id.

[FN6]  State v. Biglane, 99-111 (La. App. 5 Cir. 5/19/99), 738 So.2d 630, 635.

[FN7]  Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253-2254, 53 L.Ed.2d 140 (1977); State v. Mills, *supra*, at 107.

Generally, one-on-one identifications are not favored. However, such an identification procedure is permissible under certain circumstances.  For example, one-on-one identifications are justified when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the scene for immediate identification.[FN8]  Such prompt confrontations between the defendant and the victim promote fairness by "ensuring the reliability of the identification and the expeditious release of innocent suspects."[FN9]

[FN8]  Id.

[FN9]  State v. Clennon, 98-1370 (La. App. 5 Cir. 6/30/99), 738 So.2d 161, 164.

Defendant argues the one-on-one identification procedure was suggestive because the identification was based solely on clothing and not physical characteristics or face recognition.

In State v. Valentine,[FN10] the Fourth Circuit upheld identifications by two witnesses to an armed robbery of a restaurant that were based on the similarity of clothing between the defendant and the perpetrator. The defendant was apprehended within thirty minutes of the crime one and a half blocks from the restaurant based on the broadcasted description of the perpetrator. He was driven back to the restaurant where he was separately viewed by the two witnesses as he sat handcuffed in the back of the police car. One witness identified the defendant solely based on his clothing and the other witness identified the defendant based on his clothing and his eyes, which the witness stated he could see under the ski mask.

[FN10] 570 So.2d 533 (La. App. 4 Cir.1990).

Similarly, in the present case, Hurd was apprehended within minutes after the crime only three blocks from the robbery. Within fifteen to twenty minutes after the crime, the victims and their granddaughter were separately brought from the crime scene to the location where Hurd was apprehended. When the victims arrived, Hurd was standing in the street among several police officers. Both victims and their granddaughter made positive identifications of Hurd as the perpetrator of the robbery.

After a review of the record, we find that this one-on-one identification was not suggestive. Furthermore, applying the Manson factors, it does not appear there was a likelihood of misidentification. The victims had a clear view of the perpetrator during the robbery. Although neither victim focused on the perpetrator's face, both victims' description of the perpetrator's clothing matched that worn by Hurd. The perpetrator was described as wearing a green striped shirt and baggy blue jeans, not a common combination. Both victims, and their nine-year-old granddaughter, immediately identified defendant as the perpetrator when they arrived at the location where defendant was apprehended, only fifteen to twenty minutes after the robbery. Thus, it appears the victims' identification of defendant as the perpetrator was reliable.

Hurd asserts the identifications were also unreliable because the victims' descriptions of the perpetrator's clothes were inconsistent. Specifically, he argues Mr. Fleming stated the perpetrator was wearing a green and white striped shirt while the granddaughter stated the perpetrator was wearing a green and black

striped shirt.  Defendant also points out that the granddaughter stated the perpetrator was wearing blue jean shorts as opposed to the blue jeans he was wearing at the time he was apprehended.

In State v. Thomas,[FN11] this Court found the out-of-court identifications of the defendant by two witnesses were reliable despite minor discrepancies in the witnesses' description of the perpetrator's clothing.  Although one witness described the perpetrator as wearing a bluish colored sweat suit and the other witness stated the sweat shirt was red, this Court noted the descriptions contained "accurate details for the most part."[FN12] This Court also noted both witnesses made immediate identifications when shown the photographic lineup approximately one month after the robbery.

[FN11] 04-1341 (La. App. 5 Cir. 5/31/05), 904 So.2d 896.

[FN12] Id.

In the present case, the jury heard all of the evidence and was fully aware of the minor inconsistencies regarding the clothing.  After hearing the evidence, the jury chose to believe the victims' testimony identifying defendant as the perpetrator of the robbery.  It is the jury's function to determine the weight of the evidence bearing on the defendant's identification.  It is not the appellate court's function to reevaluate the credibility choices made by the jury.[FN13]  Viewing the evidence in the light most favorable to the prosecution, a rational trier could have found beyond a reasonable doubt that defendant was the perpetrator of the crime.

[FN13]  State v. Spencer, 93-571 (La. App. 5 Cir. 1/25/94), 631 So.2d 1363, 1370, writ denied, 94-0488 (La. 2/3/95), 649 So.2d 400.[12]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons on November 17, 2006.[13]

---

[12]  State v. Hurd, 917 So.2d at 569-72; State Rec., Vol. III of V.

[13]  State v. Hurd, 942 So.2d 530 (La. 2006) (No. 2006-KO-1128); State Rec., Vol. III of V.

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319). Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan, 271 F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).[14]

---

[14] Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does not apply in a federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008).

In the instant case, there is no question that the elements of first degree robbery were established, in that testimony at trial clearly established that the robber took something of value, i.e. cash, while leading the victims to reasonably believe he was armed with a dangerous weapon. The only issue is whether petitioner was the robber.

Certainly, there was sufficient circumstantial evidence from which the jurors could have concluded that petitioner was the robber. Minutes after the crime, petitioner was apprehended within three blocks of the crime scene. He attempted to flee from the police. When caught, he was carrying the same amount of cash in the same denominations taken in the robbery, and the two victims and the eyewitness testified that petitioner was wearing clothes matching those worn by the robber.[15]

---

[15] Petitioner argues that the evidence regarding identity was insufficient because the identification procedure used was unduly suggestive. However, the witnesses did not, either in court or out of court, ever actually identify petitioner himself. Mrs. Fleming expressly stated that she could not identify the robber; rather, she could only identify the clothes the robber was wearing. See, e.g., State Rec., Vol. I of V, transcript of June 22, 2004, pp. 39 ("I'm not saying I could recognize him by face . ... I got a good look at the clothes, and at some point I did see his face, but I didn't see enough of it."), 47 ("I told him from the clothing and the color of the drawers, that's what I – that's what I identified.), and 48 ("I said I told him it was from the clothing. I never did tell him it was a physical, you know, mostly from the clothing."). The same was true of Mr. Fleming. See, e.g., State Rec., Vol. I of V, transcript of June 22, 2004, pp. 51 and 61 (stating that he recognized only the clothing) and 65 ("I didn't [see the robber's face] – I didn't get a clear look at the person."). The same was also true of victims' granddaughter. See, e.g., State Rec., Vol. I of V, transcript of June 22, 2004, p. 75 (stating that she recognized only the clothing). When witnesses identify only clothing, a petitioner may not assert a claim that suggestive identification procedures created a substantial likelihood of misidentification in violation of due process. The United States Second Circuit Court of Appeal has explained:

> [T]he special dangers attendant to the identification of suspects do not exist with equal strength where the identification of clothing is concerned. Of course, the procedures used to obtain an identification of clothing can be suggestive. But it is the notorious inaccuracy of eyewitness identifications of *suspects* that gave the initial impetus to scholarly concern and judicial remedies. See Felice J. Levine, The

The testimony and the other evidence presented, viewed in the light most favorable to the prosecution, were sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, this Court must defer to the state court's decision rejecting that claim.

---

Psychology of Criminal Identification: The Gap From Wade to Kirby, 121 U.Pa.L.Rev. 1079, 1081 (1973) ("Erroneous identification of suspects has long been recognized by commentators as a crucial problem in the administration of justice."); United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967) ("The identification of strangers is proverbially untrustworthy.") (quoting Justice, then Professor, Felix Frankfurter, The Case of Sacco and Vanzetti 30 (1927)). Moreover, the unfairness that results from a potentially inaccurate, confrontational identification of a suspect is compounded by the persuasiveness with which juries regard this evidence. Levine, *supra*, at 1081-82. As the Supreme Court explained in Wade: "The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with ... the witness the sole jury ... and with little or no effective appeal from the judgment there rendered by the witness – 'that's the man.' " Wade, 388 U.S. at 235-36, 87 S.Ct. at 1937. We have no basis to believe that a witness's identification of clothing is either as susceptible to error or as persuasive to a jury as a witness's identification of a suspect. Indeed, a clothing identification is – particularly in this day and age of mass-marketing – often open to the argument that someone other than the perpetrator may have worn the same clothing. Thus, we find that identification of clothing is not a procedure so inherently "conducive to irreparable mistaken identification," Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969) (quoting Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967)), as to provide the basis for a denial of due process. Any suggestiveness is of course a proper matter for cross-examination as well as argument.

Johnson v. Ross, 955 F.2d 178, 180-81 (2nd Cir. 1992) (emphasis in original).

<u>Improper Closing Argument</u>

Petitioner's second claim is that the prosecutor made inappropriate comments during his closing argument. The state argues that this claim is procedurally barred. The state is correct.

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

<u>Finley v. Johnson</u>, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

The state courts clearly rejected petitioner's claim on procedural grounds. When this claim was asserted in the state post conviction proceedings, the state courts rejected the claim as procedurally defaulted because it had not been raised on direct appeal.[16] It is clear that Louisiana's rule that a claim regarding an appealable issue is waived if not asserted on direct appeal is considered an independent and adequate state court rule to support a procedural bar in federal court. <u>See, e.g.</u>, <u>Simms v. Cain</u>, Civ. Action No. 07-966, 2008 WL 624073, at *27 (E.D. La. Mar. 4, 2008);

---

[16] The state district court and the Louisiana Fifth Circuit Court of Appeal expressly denied the claim on that basis. State Rec., Vol. III of V, Order dated August 14, 2007, p. 2; <u>State v. Hurd</u>, No. 07-KH-734 (La. App. 5th Oct. 24, 2007); State Rec., Vol. IV of V. In denying the related writ application, the Louisiana Supreme Court did not assign reasons. <u>State ex rel. Hurd v. State</u>, 992 So.2d 955 (La. 2008) (No. 2007-KH-2350); State Rec., Vol. V of V. However, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground." <u>Finley</u>, 243 F.3d at 218.

Dorsey v. Louisiana, Civ. Action No. 07-036, 2007 WL 1747014, at *4 (E.D. La. June 15, 2007); Hill v. Cooper, Civ. Action No. 04-2588, 2007 WL 458207, at *7 (E.D. La. Feb. 8, 2007); Stevenson v. Cain, Civ. Action No. 06-1244, 2006 WL 2850167, at *14 & n.39 (E.D. La. Oct. 4, 2006).

"When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). In his federal application, petitioner has made no attempt to establish cause for the failure to raise the instant claim. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court must determine whether the application of the procedural bar would result in a fundamental miscarriage of justice. In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which

he was convicted." <u>Finley v. Johnson</u>, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The

United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner
> show that it is more likely than not that no reasonable juror would
> have found petitioner guilty beyond a reasonable doubt ... in light of
> all of the evidence, including that alleged to have been illegally
> admitted (but with due regard to any unreliability of it) and evidence
> tenably claimed to have been wrongfully excluded or to have become
> available only after trial.

<u>Lucas v. Johnson</u>, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).

Applying that standard, the Court finds that petitioner does not make a persuasive showing that he

is actually innocent of the charges against him. In this case, the evidence of petitioner's guilt was

substantial. Therefore, he has not demonstrated that any miscarriage of justice will result from the

application of the procedural bar. Accordingly, petitioner's claim challenging the prosecutor's

comments during his closing argument is procedurally barred in this federal court.

Out of an abundance of caution, however, the Court notes that petitioner's claim

would also be subject to denial on the merits. The United States Fifth Circuit Court of Appeals has

held:

> Even if ... [a] prosecutor's remarks [are] improper,
> prosecutorial remarks are a sufficient ground for habeas relief only
> if they are so prejudicial that they render the trial fundamentally
> unfair. Such unfairness exists only if the prosecutor's remarks evince
> either persistent and pronounced misconduct or the evidence was so
> insubstantial that (in probability) but for the remarks no conviction
> would have occurred.

<u>Harris v. Cockrell</u>, 313 F.3d 238, 245 (5th Cir. 2002) (internal quotation marks, ellipsis, and footnote

omitted); <u>see also</u> <u>Jones v. Butler</u>, 864 F.2d 348 (5th Cir. 1989). In other words, a prosecutor's

remarks warrant *habeas* relief only if they were "a crucial, critical, highly significant factor upon which the jury based its verdict." Harris, 313 F.3d at 245.

In the instant case, petitioner objects to the prosecutor's following comments:

> This is the worse [sic] kind of defendant. He's a predator. He picks on people that he thinks can't protect themselves. He picked that home because of who was in that home. We don't know how long he stayed around or how many days or whether he had been there before to see that it was an older couple with young grandchildren that lived there. We know that he was cool enough to just walk in that door, so he must have known who was going to be in that house, and that they wouldn't be able to protect themselves.[17]

Petitioner opines that these comments were inappropriate because they "implied" that he had a "history of committing similar acts by stalking elderly people and children."[18] The Court finds no such implication in the remarks. Moreover, even if the prosecutor's comments were found to be improper, petitioner is not entitled to relief pursuant to the applicable standard. The prosecutor's comments were neither persistent nor pronounced. Further, in light of the considerable evidence of petitioner's guilt, the remarks clearly were not a "crucial, critical, highly significant factor" in the jury's verdict. The comments simply did not render petitioner's trial fundamentally unfair.

### Ineffective Assistance of Counsel

Petitioner next claims that his trial counsel was ineffective. Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that

---

[17]  State Rec., Vol. II of V, transcript of June 22, 2004, pp. 154-55.

[18]  Rec. Doc. 1, supporting memorandum, p. 13.

his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Id. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a

determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decisions rejecting such claims unless those decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that neither of those conditions is met in the instant case and that, therefore, this federal court should defer to the state courts' rulings.

Petitioner first contends that his counsel was ineffective for failing to object to the following jury instruction on flight:

> If you find that the defendant fled immediately after a crime was committed or after he was accused of a crime, the flight alone is not sufficient to prove that a defendant is guilty. However, flight may be considered along with all other evidence. You must decide whether such flight was due to consciousness of guilty [sic] or to other reasons unrelated to guilt.[19]

Under Louisiana law, "[f]light and attempt to avoid apprehension indicates consciousness of guilt, and therefore, is one of the circumstances from which a juror may infer

---

[19] State Rec., Vol. II of V, transcript of June 22, 2004, p. 168.

guilt." State v. Fuller, 418 So.2d 591, 593 (La. 1982); see also State v. Davies, 350 So.2d 586, 588 (La. 1977). The trial judge's instruction on this point was consistent with the law and entirely proper. Therefore, any objection to the evidence or the jury instruction would have been meritless. Counsel is not ineffective for failing to lodge frivolous objections. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). This claim clearly has no merit. See Simms v. Cain, Civ. Action No. 07-966, 2008 WL 624073, at *25 & n. 41 (E.D. La. Mar. 4, 2008) (rejecting similar ineffective assistance claim involving the failure to object to an identical instruction).

Petitioner next contends that counsel was ineffective for failing to investigate the 911 tape to demonstrate inconsistencies in the witnesses' testimony. This claim fails for two reasons. First, the record reflects that defense counsel did in fact attempt to secure the 911 tape but the police failed to provide it prior to trial.[20] Second, in any event, a petitioner asserting a claim for inadequate investigation bears the burden to provide factual support as to what further investigation would have revealed. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). In the instant case, petitioner argues that the 911 might be useful to show inconsistencies in the description of the perpetrator. However, those inconsistencies were fully

---

[20] State Rec., Vol. I of V, transcript of June 22, 2004, p. 8.

explored during the witnesses' testimony at trial, and petitioner has brought forth no evidence whatsoever evidence to show that review of the 911 tape would have revealed any additional inconsistences which would have been beneficial to the defense. Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation.

Petitioner also contends that counsel was ineffective in failing to pursue his request for sequestration of the witnesses. In the instant case, counsel requested a sequestration order, and that request was granted.[21] However, petitioner claims that counsel should have objected when the victims and their family members remained in the courtroom during the entire trial despite the sequestration order. That claim fails because Louisiana law expressly exempts from a sequestration order the victims and their family members. La. Code Evid. art. 615(B)(4); State v. Johnson, 833 So.2d 508, 511 (La. App. 4th Cir. 2002). Therefore, there was no violation of the sequestration order, and any objection to their presence would have had no merit. As previously noted, counsel is not ineffective for failing to lodge frivolous objections. Accordingly, petitioner's claim has no merit. See Pollard v. Cain, 2007 WL 4299991, at *16 (W.D. La. Nov. 9, 2007) (Hill, M.J.), adopted, 2007 WL 4995452 (W.D. La. Dec. 4, 2007) (Melancon, J.).

Lastly, petitioner contends that counsel was ineffective in failing to adequately challenge the multiple bill of information. In rejecting this claim, the state district court held:

> The petitioner specifically complains that his attorney was ineffective for failing to move to quash the habitual offender bill. The record contains counsel's Response to Multiple Offender Bill in which counsel challenges the admissibility of the prior convictions. The multiple offender hearing was set numerous times, and on

---

[21]  State Rec., Vol. I of V, transcript of June 22, 2004, pp. 16-17.

September 10, 2004, the state introduced fingerprint cards, certified copies of convictions, and arrest registers from four previous convictions. After the life sentence was imposed on December 3, 2004, counsel objected and noted that the defense would appeal.

Notably, the trial court issued written reasons for judgment in the multiple offender adjudication. The evidence of the prior convictions was overwhelming. The record shows that defense counsel made zealous efforts to defeat the multiple offender adjudication and, when the adjudication was made, objected to the life sentence. Upon full review of the entire record, this court finds as a matter of law that neither prong of the <u>Strickland</u> test is met. Relief on this claim will be denied.[22]

When petitioner sought review of that judgment, the Louisiana Fifth Circuit Court of Appeal held:

To be successful on this claim, Petitioner must show both constitutionally defective performance of counsel and prejudice resulting therefrom. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner herein did not succeed in proving either in the trial court. On review, we find he has not, with sufficient particularity, shown that the trial court erred in its ruling. Accordingly, finding no error in the trial court ruling, we deny the writ application.[23]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[24]

---

[22]  State Rec., Vol. III of V, Order dated August 14, 2007, p. 3.

[23]  <u>State v. Hurd</u>, No. 07-KH-734 (La. App. 5th Cir. Oct. 24, 2007) (unpublished); State Rec., Vol. IV of V.

[24]  <u>State *ex rel.* Hurd v. State</u>, 992 So.2d 955 (La. 2008) (No. 2007-KH-2350); State Rec., Vol. V of V.

Although counsel filed a response challenging the multiple bill of information on various grounds,[25] petitioner argues that counsel should have challenged the multiple bill on two additional grounds not argued in that response.  Specifically, petitioner claims that counsel should have argued that multiple bill wrongly included (1) two predicate convictions which were obtained on the same day and (2) a predicate conviction for possession of a firearm by a convicted felon.

Petitioner's claims, and perhaps his confusion, stem from the fact that the multiple bill of information listed *four* prior convictions:  possession of a firearm by a felon (La.Rev.Stat.Ann. § 14:95.1) on April 17, 1997; theft over $500 (La.Rev.Stat.Ann. § 14:67) on February 26, 1996; armed robbery (La.Rev.Stat.Ann. § 14:64) on May 22, 1995; and unauthorized entry (La.Rev.Stat.Ann. § 14:62.3) on May 22, 1995.  However, the state made clear that it was in fact using only one of the 1995 convictions as a predicate offense and was therefore charging petitioner as merely a fourth offender.[26]  Further, the court ultimately adjudicated petitioner as only a fourth offender based on the convictions for possession of a firearm by a felon on April 17, 1997, theft over $500 on February 26, 1996, and unauthorized entry on May 22, 1995.[27]

Turning now to petitioner's specific contentions, it is apparent that neither of them has merit for the following reasons.

---

[25]  See State Rec., Vol. III of V, Response to Multiple Bill of Information Pursuant to R.S. 15:529.1.

[26]  State Rec., Vol. II of V, transcript of September 10, 2004, pp. 8-9.

[27]  State Rec., Vol. II of V, transcript of November 5, 2004, pp. 16-17; State Rec., Vol. I of V, Reasons dated December 3, 2004 .

As to the contention that counsel should have argued petitioner could not be adjudicated a multiple offender based on two predicate convictions obtained on the same day, that claim fails for several reasons. First, contrary to petitioner's contention, counsel did in fact argue that the state could not use both of the convictions from May 22, 1995.[28] Second, as noted, the state made clear that only one of the two 1995 convictions was being charged as a predicate offense in the multiple offender proceeding. Third, petitioner's multiple offender adjudication was based on only one of two 1995 convictions, i.e. the unauthorized entry conviction. In light of the foregoing, petitioner cannot demonstrate either that counsel performed deficiently or that he was prejudiced as a result.

Petitioner next argues that his habitual offender adjudication violated the prohibition against double enhancement. Petitioner's armed robbery conviction had already been used to support his conviction for possession of a firearm by a convicted felon. Therefore, as the prosecutor acknowledged at the habitual offender proceeding, it would violate the rule against double enhancement to use both of those convictions to enhance petitioner's current sentence. State v. Hymes, 513 So.2d 371, 373 (La. App. 4th Cir. 1987); see also Simms v. Cain, Civ. Action No. 07-966, 2008 WL 624073, at *18 n.27 (E.D. La. Mar. 4, 2008). However, because the prosecutor did not use the armed robbery conviction as a predicate conviction in the multiple offender proceeding, there was no double enhancement violation in this case. State v. Moten, 619 So.2d 683, 685-86 (La. App. 4th Cir. 1993). Accordingly, counsel did not perform deficiently in failing to raise such an objection, and petitioner suffered no prejudice. Simms, 2008 WL 624073, at *26.

---

[28] State Rec., Vol. II of V, transcript of November 5, 2004, p. 11.

In summary, petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Therefore, the AEDPA's deferential standard requires that this Court likewise reject those claims.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Shannon Hurd be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this fourth day of August, 2009.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**